C. W. HULL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 457.     Promulgated February 8, 1928.

*Ben Jenkins, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

616

OPINION.

GREEN: Petitioner alleges error in respondent's disallowance of a paid-in surplus of $177,471.17 and $174,391.17, as invested capital for the fiscal years 1920 and 1921, respectively. The amounts claimed as a paid-in surplus represent the estimated depreciated cost to C. W. Hull and his father of the three yards, stables, and garages, and the improvements thereon, operated by petitioner in the conduct of its business.

This contention is based upon the theory that the title to the property in question was acquired by the petitioner through adverse possession. C. W. Hull as an individual acquired the real estate upon which the yards and stables were located. Upon these properties with his own funds, he constructed the improvements necessary for the conduct of the business of the petitioner. At the time of its construction, the property was fenced and advertising signs of the petitioner placed thereon.

Title by adverse possession under the laws of the State of Nebraska may be acquired within 10 years. See chapter 2, section 8507, Compiled Statutes of Nebraska.

In the case of *Gatling* v. *Lane*, 17 Nebr. 80, 22 N. W. 453, the rule in regard to adverse possession is stated as follows:

A person who enters upon the land of another with the intention of occupying the same as his own and carries that intention into effect by open, notorious, exclusive, adverse possession of the premises for ten years, thereby disseises the owner, and this is so whether the entry and possession are contrary to the right of the owner or not, if the occupant denies the owner's title and claims the land as his own.

In Thompson on real property, at section 2515, the rule in regard to adverse possession is stated as follows:

Adverse possession of real estate is possession thereof inconsistent with the right of the true owner and when such possession is accompanied by certain acts and circumstances, the title will vest in the possessor. The possession must be hostile, actual, exclusive, notorious, continuous, and under a claim of title, during the time necessary to create a bar under the statute of limitations. The absence of any of these elements or others required by statute will prevent the acquisition of title by adverse possession.

There is nothing in the record to show that the petitioner entered upon the property in question other than with the consent of the owner, Hull, the sole stockholder of C. W. Hull Co. Hull testified that he was daily present upon the premises at the time the buildings were constructed and that he was a frequent visitor thereafter. It is

true that the properties were fenced and that they bore the sign of the petitioner. Both the fencing and the painting of signs upon the premises was a usual and customary incident in carrying on business of this nature. Neither these facts nor the payment of the taxes and interest on mortgages by the petitioner are sufficient in themselves to show possession hostile to that of the owner of the land. The facts show that the original entry was permissive and with the entire consent of the owner of the property. A tenancy was created and nothing has happened in the ensuing years to alter this situation. Mr. Hull was in peculiar control of the situation. He, and he alone, would have known of an adverse intent on the part of the corporation. It appears that the only way that the corporation could have acquired title would have been by gift or purchase and the records do not bear this out. Accordingly, it is held that the Commissioner properly refused to include the value of the coal yards in question in the invested capital of the petitioner.

The second assignment of error is that respondent refused to allow a deduction of $2,980 from the income of each of the years on appeal on account of depreciation of the properties which are the subject of petitioner's claim for paid-in surplus under the first issue. Petitioner concedes that if it be the determination of the Board that it is not entitled to include the properties referred to in the first issue in invested capital as a paid-in surplus, then the second assignment of error must be resolved in favor of respondent. We think this concession by the petitioner is a proper one. Petitioner has made no capital investment in the properties referred to which may be made the subject of an allowance for depreciation. *Appeal of Gladding Dry Goods Co.*, 2 B. T. A. 336.

The third assignment of error is that respondent arbitrarily, and without affirmative evidence, reduced invested capital of both years on appeal by $31,172.63 on account of alleged inadequate depreciation charged off to December 31, 1916. In the brief filed after the hearing, petitioner concedes that respondent's action is correct so far as it relates to and includes accrued depreciation on furniture and fixtures, and motor equipment. The evidence is wholly insufficient to show error in respondent's action. Petitioner has contented itself with placing in evidence the amounts of depreciation charged off and of repairs charged to expense from 1911 to 1916, inclusive. There is nothing to show that respondent did not give consideration to the facts relating to the depreciation provided for on the books, in arriving at his determination that the amount provided for was inadequate to take care of the depreciation actually sustained. There is no proof as to the adequacy of the depreciation provided for on the books, and the prima facie correctness of respondent's determination is not overcome.

The fourth assignment of error is that respondent erroneously reduced invested capital for the fiscal year 1920 by $27,726.78 because of an operating deficit at the beginning of the taxable year, and by the further sum of $7,043.81 on account of income and profits taxes of prior years. Our jurisdiction on this issue is confined solely to the consideration of such facts with relation to the taxes for 1920 as may be necessary correctly to redetermine the deficiency for the fiscal year 1921.

The following allegation appears in the petition:

(e) In computing invested capital for the fiscal year ending March 31, 1920, the Commissioner reduced the outstanding capital stock by the aggregate amount of $34,770.59 for a deficit, when such a deficit was an operating deficit.

In the respondent's answer appears the following which relates to the allegation of the petition above quoted:

Admits that the other adjustments as alleged in paragraphs 4, (b), (c), (d) and (e) were made by the Commissioner.

The petitioner has thus alleged that the respondent reduced the capital stock by the amount of certain operating deficits. This action on the part of the respondent is admitted by the answer. It is of course conceded by the respondent that operating deficits may not be applied against amounts paid in to the corporation for stock or shares. We have held in a succession of cases based upon the *Appeal of Valdosta Grocery Co.*, 2 B. T. A. 727, that a capitalization by stock dividend of earned surplus does not translate such earned surplus into paid in capital so that it may not be reduced by an operating deficit.

No proof was introduced from which we can determine whether this petitioner has declared a stock dividend, but from its brief it appears that such a dividend in the amount of $900,000 was declared on August 12, 1907. The brief also sets forth as of the same date a debit of cash in the amount of $25,000 and a credit in the amount of $750,000 on account of good will. The respondent, on July 16, 1923, wrote the petitioner with reference to its taxes for the years here involved and in such letter set out the following computation of invested capital:

| | | |
|---|---:|---:|
| Capital Stock | | $1,000,000.00 |
| Less: Deficit | | 27,726.78 |
| Balance | | 972,273.22 |
| Good Will | $750,000.00 | |
| Add: Tax (1918) | 918.42 | |
| | | 750,918.42 |
| Balance | | 221,354.80 |

It thus appears that the respondent has reduced invested capital by the amount of $750,000. This reduction is less in amount than was

the stock dividend and it seems clear that the respondent has allowed a capitalization of earned surplus in the amount of $150,000.

From the information before us (and it is grossly inadequate and wholly insufficient for an accurate determination of the question) we conclude that the respondent has applied the operating deficits in reduction of a capitalized earned surplus. Under such circumstances we can not hold that the respondent erred when he reduced " outstanding capital stock " by the amount of the operating deficits.

The fifth assignment of .error is that respondent has understated the income of 1920 and 1921 by the allowance of a deduction for each year for depreciation of motor delivery equipment in excess of a reasonable allowance. Respondent denied the allegation, and petitioner submitted no proof. Respondent sustained on this issue.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*